UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

NICOLE RIEDERER,

                    Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

**DECISION AND ORDER**

1:19-CV-00242 EAW

## <u>INTRODUCTION</u>

Represented by counsel, plaintiff Nicole Riederer ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for supplemental security income ("SSI").  (Dkt. 1).  This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g).  Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 8; Dkt. 11).  For the reasons discussed below, the Commissioner's motion (Dkt. 11) is granted and Plaintiff's motion (Dkt. 8) is denied.

## BACKGROUND

Plaintiff protectively filed her application for SSI on April 30, 2015.  (Dkt. 6 at 21).[1] In her application, Plaintiff alleged disability beginning January 1, 2015, due to anxiety, back problems, panic disorder with agoraphobia, and major depressive disorder.  (*Id*. at 21, 184, 192).  Plaintiff's application was initially denied on August 21, 2015.  (*Id*. at 21, 101-104).  At Plaintiff's request, a hearing was held before administrative law judge ("ALJ") Stephen V. Cordovani on December 11, 2017, in Buffalo, New York.  (*Id*. at 21, 39-88, 105-108).  On February 16, 2018, the ALJ issued an unfavorable decision.  (*Id*. at 18-38).  Plaintiff requested Appeals Council review; her request was denied on December 27, 2018, making the ALJ's determination the Commissioner's final decision.  (*Id*. at 5-12).  This action followed.

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more

---

[1]     When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.    <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act.  *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 416.920(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, in that it imposes significant restrictions on the claimant's ability to perform basic work activities.  *Id*. § 416.920(c).  If the claimant does not have a severe impairment or

combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 416.920(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 416.909), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id*. § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work. *Id*. § 416.920(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 416.920(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

## I.   The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920. At step one, the ALJ determined

that Plaintiff had not engaged in substantial gainful work activity since April 30, 2015, the

application date.  (Dkt. 6 at 23).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of

degenerative disc disease, major depressive disorder, generalized anxiety disorder, and

post-traumatic stress disorder.  (*Id*.).  The ALJ further found that Plaintiff's alleged

medically determinable impairments of carpal tunnel syndrome, knee arthritis, and

osteopenia were nonsevere.  (*Id*.).

At step three, the ALJ found that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled the severity of any Listing.

(*Id*.).  The ALJ particularly considered the criteria of Listings 12.04, 12.06, and 12.15 in

reaching his conclusion.  (*Id*. at 24-25).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC

to perform light work as defined in 20 C.F.R. § 416.967(b), with the additional limitations

that:

> [Plaintiff] can frequently climb ramps and stairs; can occasionally kneel,
> crouch, and crawl; can never climb ladders/ropes/scaffolds; cannot work at
> unprotected heights; can understand, remember, and carry out simple
> instructions and tasks; can work in low stress jobs reflected by simple
> instructions and tasks and no supervisory duties, no independent decision-
> making, no struct production quotas or production rate pace, minimal
> changes in work routine and processes; and can tolerate frequent interaction
> with supervisors, occasional interaction with co-workers, and only incidental
> interaction with the general public.

(*Id*. at 25).

At step four, the ALJ found that Plaintiff had no past relevant work.  (*Id*. at 32).

At step five, the ALJ relied on the testimony of a vocational expert to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of checker, marker, and garment sorter.   (*Id*. at 32-33). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act.  (*Id.* at 33).

## II.   The Commissioner's Determination is Supported by Substantial Evidence and Free from Reversible Error

Plaintiff asks the Court to reverse or, in the alterative, remand this matter to the Commissioner, arguing the ALJ's assessment of Plaintiff's physical and mental RFC was not supported by competent medical opinion.  (*See* Dkt. 8-1 at 14-20).  The Court finds this argument without merit, for the reasons discussed below.

### A.   Assessment of Physical RFC

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).   An RFC represents "the most work a claimant can still do despite limitations from an impairment and/or its related symptoms." *Farnham v. Astrue*, 832 F. Supp. 2d 243, 263 (W.D.N.Y. 2011) (citing 20 C.F.R. § 416.945(a)).   "An RFC finding will be upheld when it is supported by 'substantial evidence' in the record."  *Rapaport v. Commissioner*, No. 16-CV-2617 (VSB)(JCF), 2018 WL 3122056, at *4 (S.D.N.Y. June 26, 2018) (citing *Goodale v. Astrue*, 32 F. Supp. 3d 345, 356 (N.D.N.Y. 2012)).

The Court finds no error in the ALJ's assessment of Plaintiff's physical RFC.  As

the ALJ correctly noted, the medical evidence of record demonstrated a "pattern" in which Plaintiff would "make[] extreme allegations, with symptom patterns that are also highly atypical," but then "refuse[] further evaluation or further treatment" while also "tell[ing] contemporaneous treating sources conflicting results." (Dkt. 6 at 28). For example, in an intake questionnaire completed on April 4, 2015, Plaintiff reported that her back pain was so severe that she could lift only three to five pounds, was bedridden most of the time and had to crawl to the toilet, and could not sit or stand for more than an hour. (*Id*. at 297). However, on April 8, 2015, neurosurgeon Dr. John Pollina performed a clinical examination of Plaintiff and found normal gait, reflexes, sensation and strength, with unremarkable straight-leg raise testing and no tenderness. (*Id*. at 292). Then, in June 2015, Plaintiff told her primary care physician that she had never been evaluated for her spine condition despite having been seen by Dr. Pollina two months earlier. (*Id.* at 318).

In May 2015, Dr. Bianca Belli of Niagara Falls Memorial Medical Center ("NFMMC"), where Plaintiff received primary care, examined Plaintiff and noted no tenderness and normal reflexes, strength, and sensation, and full range of motion. (*Id*. at 321). In June 2015, Dr. John Wickett of NFMMC examined Plaintiff and observed no tenderness, intact strength and sensation, and a full range of motion throughout the body. (*Id*. at 318). Dr. Wickett believed Plaintiff was suffering from a somatization disorder[2]

---

[2]     "Somatization is the conversion of mental experiences or states into bodily symptoms. . . . A patient with this disorder may simply complain of being sickly or may have specific symptoms, such as double vision, fainting, abdominal pain, bowel problems, painful menstruation, or sexual indifference. These complaints are often presented in a dramatic and exaggerated manner, but the patient is vague about the exact nature of the symptoms." *Anderson v. Comm'r of Soc. Sec*., No. 01 CIV. 3330 WHPJCF, 2002 WL 31045861, at *1 (S.D.N.Y. May 31, 2002) (quotation and citations omitted).

because her "pain patterns [did] not follow any nerve pattern" and she had no "weakness, or physical signs of pain," and offered her SSRI medication, but Plaintiff refused. (*Id.* at 319).

At a July 9, 2015, consultative examination with Dr. John Schwab, despite claiming to be suffering from pain at a 10/10 level of intensity, Plaintiff had a normal gait, was in no acute distress, had a full range of motion in her cervical and lumbar spine, exhibited no tenderness, had normal reflexes, sensation, and strength, was able to rise from her chair without difficult and needed no help getting on and off the exam table, and was able to squat "3/4 of the way down." (*Id.* at 311-13). Based on his examination of Plaintiff, Dr. Schwab opined that she had no physical restrictions. (*Id.* at 313).

 In December 2015, Dr. Michael Jaje of NFMMC examined Plaintiff and observed that she had a full range of motion in her neck, full muscle strength, and no tenderness in her spine, though she "complain[ed] of pain during testing." (*Id.* at 490-91). Dr. Jaje offered Plaintiff EMG testing, but she refused. (*Id.* at 492). In January 2016, Dr. Jaje again examined Plaintiff, and observed normal gait, full musculoskeletal strength, "diffuse mild tenderness over palpation of any bone," and positive straight-leg raise testing bilaterally. (*Id.* at 488).

An MRI was performed in February 2016 that showed an "essentially normal" thoracic spine, "loss of cervical lordosis with . . . central [disc] herniation at C5-6," and "L4-5 and L5-S1 degenerative [disc] disease with a central and leftward [disc] protrusion at L4-5 and bilateral [disc] bulging at L5-S1." (*Id.* at 362; *see id.* at 549-551). In March 2016, Dr. Pollina examined Plaintiff and observed that she ambulated without difficulty,

had no tenderness to palpation in her cervical, thoracic, or lumbar spine, had free range of motion in her cervical spine, and had "4 to 5/5 strength in all extremities." (*Id.* at 362). Based on the February 2016 MRI study, Dr. Pollina offered Plaintiff spinal surgery, but she indicated she wanted "some time to think about her options." (*Id.*). Plaintiff never returned to Dr. Pollina. In April 2016, Plaintiff inaccurately told Dr. Jaje that Dr. Pollina had told her he could not do anything for her neck pain. (*Id.* at 479).

On June 8, 2016, Plaintiff underwent a whole body bone scan that showed "mild patchy uptake involving the shoulders and sternoclavicular joints consistent with degenerative changes" and "mild patchy uptake involving the thoracolumbar spine consistent with mild degenerative changes." (*Id.* at 538). The rest of the scan was unremarkable. (*Id.*). At an appointment with Dr. Jaje in March 2017, Plaintiff reported that her "low back pain" was "minimal to none," though it would occasionally flare to moderate for a few minutes. (*Id.* at 456). On examination, Plaintiff had normal gait, but also exhibited multiple tender points along her arms and paraspinal region. (*Id.* at 457-58).

Neurologist Dr. Anand Nyathappa examined Plaintiff on March 29, 2017, and noted normal strength and gait with tenderness at C4, C6, and L4-5. (*Id.* at 437). In June 2017, Plaintiff reported to Dr. Jaje that her neck pain was "unchanged in quantity or quality from previous visits"; on examination, she had spinal tenderness. (*Id.* at 449-50). In August 2017, Dr. Michael Logdon examined Plaintiff and observed that she had no tenderness to palpation along her spine, intact range of motion, and negative straight-leg raise testing bilaterally. (*Id.* at 446-47).

Having thoroughly discussed and considered this medical history, the ALJ evaluated

the medical opinion evidence of record.  The ALJ noted that on March 25, 2015, Dr. Belli had written a letter stating that Plaintiff was "unable to walk to classes due to her back pain."  (*Id*. at 350).  The ALJ noted that this opinion predated the application date and was in any event inconsistent with the evidence of record showing that Plaintiff consistently had a normal gait.  (*Id.* at 29).

The ALJ also considered Dr. Schwab's opinion that Plaintiff had no physical restrictions.  (*Id*.).  The ALJ noted that Dr. Schwab's opinion was consistent with his physical examination and that the longitudinal medical record was "significantly out of proportion" with Plaintiff's allegations of more severe limitations.  (*Id*.).  However, recognizing that the record contained diagnostic imaging and "some remarkable clinical findings" suggesting some degree of limitation, the ALJ afforded Dr. Schwab's opinion "little weight" and concluded that Plaintiff was able to "sustain a reduced range of light work."  (*Id*.).

Plaintiff contends that the ALJ erred in assessing her physical RFC because he "rejected every medical opinion of record" and relied on "his own interpretation of the medical evidence."  (Dkt. 8-1 at 14).  The Court is not persuaded by this argument.  The Court notes that the ALJ did not "reject" Dr. Schwab's opinion—to the contrary, he noted that Dr. Schwab's opinion was consistent with his examination of Plaintiff and largely supported by the generally unremarkable longitudinal medical record.  Nonetheless, affording Plaintiff the benefit of the doubt and taking into account the fact that the objective diagnostic imaging did show degenerative disc disease, the ALJ assessed a more restrictive RFC finding.  This was not error.  *See Beckles v. Comm'r of Soc. Sec.*, No. 18-CV-321P,

2019 WL 4140936, at *5 (W.D.N.Y. Aug. 30, 2019) ("Here, the ALJ did not completely reject [the consultative examiner's] medical opinion; rather, she incorporated [the consultative examiner's] assessed limitations and also included greater limitations than opined by [the consultative examiner]. I find that the ALJ's RFC determination is supported by medical opinion evidence and is not the product of the ALJ's own lay interpretation of the medical evidence."); *Baker v. Berryhill*, No. 1:15-cv-00943-MAT, 2018 WL 1173782, at *2 (W.D.N.Y. Mar. 6, 2018) ("Where an ALJ makes an RFC assessment that is more restrictive than the medical opinions of record, it is generally not a basis for remand." (internal quotation marks and citations omitted)); *Castle v. Colvin*, No. 1:15-CV-00113(MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) ("[T]he fact that the ALJ's RFC assessment did not perfectly match [the consultative examiner's] opinion, and was in fact more restrictive than that opinion, is not grounds for remand.").

The Court further rejects Plaintiff's argument that the ALJ failed to explain how he concluded that Plaintiff was capable of a restricted range of light work. To the contrary, the ALJ was clear that he had partially credited Plaintiff's own testimony regarding her limitations. (*See* Dkt. 6 at 28-29). Plaintiff testified at the hearing that she was only able to lift a "newborn child." (*Id*. at 69-70). Plaintiff also reported that her back pain could make it difficult for her to bend, that she experienced pain when kneeling, that climbing stairs was "ok," and that squatting was "uncomfortable." (*Id*. at 196-202). Although the ALJ did not fully credit these statements, he partially accommodated them by restricting Plaintiff to light work, which requires lifting no more than 20 pounds, and by incorporating additional limitations on her ability to climb, kneel, crouch, and crawl. In assessing

- 11 -

Plaintiff's RFC, the ALJ was free "to credit some of [P]laintiff's statements while discrediting others," especially in light of the discrepancies between her extreme complaints and the comparatively unremarkable longitudinal medical record. *Dougherty-Noteboom v. Berryhill*, No. 17-CV-00243-HBS, 2018 WL 3866671, at *10 (W.D.N.Y. Aug. 15, 2018); *see also Barbato v. Astrue*, No. 09-CV-6530T, 2019 WL 2710521, at *5 (W.D.N.Y. July 7, 2010) (finding it not error for the ALJ to discount some of the plaintiff's subjective complaints where he found that the plaintiff was not entirely credible). The Court accordingly rejects Plaintiff's claim that the ALJ committed reversible error in assessing her physical RFC.

### B.   <u>Assessment of Mental RFC</u>

As with her physical RFC, Plaintiff contends that the ALJ committed reversible error in assessing her mental RFC because he rejected all medical opinions and relied on his own lay review of the record. (Dkt. 8-1 at 16-17). This argument is without merit. In assessing Plaintiff's RFC, the ALJ expressly relied upon opinion evidence. First, the ALJ gave partial weight to the opinion of consultative examiner Dr. Christine Ransom. (Dkt. 6 at 32). Dr. Ransom examined Plaintiff on July 9, 2015, and opined that she would have mild difficulty following and understanding simple direction, performing simple tasks independently, maintaining attention and concentration for simple tasks, maintaining a simple regular schedule, learning simple new tasks, performing complex tasks, relating adequately with others, and appropriately dealing with stress. (*Id.* at 309). Similar to his assessment of Dr. Schwab's opinion, the ALJ noted that Dr. Ransom's opinion was consistent with her examination of Plaintiff, but concluded that it was appropriate to assess

more restrictive limitations.  (*Id.* at 32).  As discussed above, this was not error on the part of the ALJ.  *See Beckles*, 2019 WL 4140936, at *5; *Baker*, 2018 WL 1173782, at *2; *Castle*, 2017 WL 3939362, at *3.

The ALJ further relied on a functional assessment performed by treating therapist Erin Melfi on August 8, 2017.  (*Id.* at 32).  Ms. Melfi opined that Plaintiff had "no evidence of limitations" in understanding and remembering instructions, carrying out instructions, making simple decisions, interacting appropriately with others, maintaining socially appropriate behavior without exhibiting behavior extremes, and maintaining basic standards or grooming, and only moderate limitations in maintaining attention and concentration and functioning in a work setting at a consistent pace.  (*Id.* at 575).  The ALJ explained that while he disagreed with Ms. Melfi's ultimate conclusion that Plaintiff's limitations rendered her unable to work, the assessed mental RFC was "not inconsistent with Ms. Melfi's own function-by-function analysis[.]"  (*Id.* at 32).  The ALJ was free to rely on portions of Ms. Melfi's opinion while disregarding others as unsupported by the medical evidence of record.  *See  Riley v. Comm'r of Soc. Security*, No. 18-CV-6538-MJP, 2020 WL 1061492, at *8 (W.D.N.Y. Mar. 5, 2020) ("Where the A.L.J. explains why he credited some portions of the medical opinion evidence and did not credit others, he has not substituted his own opinion for that of a medical source.").

Based on the foregoing, the Court finds Plaintiff's argument that the ALJ relied on his own lay opinion in assessing her mental RFC unsupported by the record.  Remand on this basis is not warranted.

**CONCLUSION**

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 11) is granted and Plaintiff's motion for judgment on the pleadings (Dkt. 8) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: June 1, 2020
        Rochester, New York